UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAZMIN GUERRA,<br><br>                Plaintiff,<br><br>        v.<br><br>MONTAGE HEALTH, et al.,<br><br>                Defendants. | Case No.  5:22-cv-02882-EJD<br><br>**ORDER TERMINATING MOTION FOR LEAVE TO FILE AMENDED ANSWER; GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 31, 33, 34 |

Plaintiff Jazmin Guerra ("Plaintiff") brings claims against Defendants Montage Health and Community Hospital of the Monterey Peninsula ("CHOMP") (collectively, "Defendants") alleging that their 2021 COVID-19 policy preventing Plaintiff's husband from accompanying her into the emergency department violates Titles III and IV of the Americans with Disabilities Act ("ADA"), the California Disabled Persons Act ("CDPA"), and the California Unruh Civil Rights Act ("Unruh Act").  Compl., ECF No. 1.  Before the Court are three motions: (1) Defendants' motion to amend their Answer; (2) Plaintiff's motion for summary judgment ("MSJ"); and (3) Defendants' cross-motion for summary judgment ("Cross-MSJ").  Mot. to Amend, ECF No. 33; MSJ, ECF No. 31; Cross-MSJ, ECF No. 34.  All motions are fully briefed.  Opp'n to Mot. to Amend, ECF No. 36; Reply to Mot. to Amend, ECF No. 47; MSJ Reply, ECF No. 37; Cross-MSJ Reply, ECF No. 46.

Upon careful review of the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b).  For the reasons explained below, the Court **TERMINATES AS MOOT** Defendants' motion to amend; **GRANTS IN PART** and

Case No.: 5:22-cv-02882-EJD
ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS

United States District Court
Northern District of California

**DENIES IN PART** Plaintiff's MSJ; and **GRANTS IN PART** and **DENIES IN PART** Defendants' Cross-MSJ.

## I.    BACKGROUND

The Court will summarize in turn CHOMP's visitor policies, Plaintiff's relevant background, and Plaintiff's October 27, 2021, emergency department visit.

### A.    CHOMP Visitor Policies

Prior to the outbreak of COVID-19 in March 2020, outpatients in CHOMP's emergency department were able to have a visitor.  Hernandez Dep. 41, ECF No. 34-5.  However, due to the COVID-19 pandemic, CHOMP reports that it made changes to this policy to protect staff, patients, and visitors as their understanding of the virus developed.  *Id.*  As a result, in October 2021, CHOMP had a policy in effect that did not allow visitors to accompany patients in the emergency department, except under certain circumstances.  Cabrales Dep. 35, ECF No. 34-5.  Exceptions to this policy included, for example, a patient in critical condition being within imminent death, or other circumstances when the exception is supported by the administrating supervisor.  *Id.* at 24, 33–34.  When a patient would request an exception to this policy, the medical staff would contact the nursing supervisor for approval.  Hernandez Dep. 57.  These requests typically took about twenty minutes to be resolved.  *Id.* at 58–60.  However, procedures for obtaining approval would change depending on staffing availability, which was impacted by COVID-19 as well.  Hernandez Decl. ¶ 4.

Given the development of the pandemic and the progress in immunity levels, treatments, and research, CHOMP rescinded this policy in 2023 and returned to their prior policy of allowing patients to have visitors in the emergency department.  Cabrales Dep. 27–28, 31.

### B.    Plaintiff's Background

At the time of Plaintiff's October 27, 2021, emergency department visit (also referred to as "the incident"), Plaintiff was twenty-two years old and had been married to her husband since June

2021.  Guerra Decl.[1] ¶ 2, ECF No. 31-2.  Plaintiff lived in Monterey, California and worked outside of her home as a temporary client service representative for an insurance company. Guerra Dep. 10–12, 14, ECF No. 34-5.  Plaintiff was offered a permanent position but declined so she could later move to Reno, Nevada.  *Id.*

At some point in her early twenties, Plaintiff reports that she was diagnosed with panic disorder, social anxiety, and generalized anxiety resulting in part from having to receive multiple medical procedures to treat her kidney cancer when she was a child.  Guerra Decl. ¶¶ 4–5. Plaintiff alleges that her conditions caused her to often call out of work, avoid driving, and avoid other people, as well as impacted her ability to communicate with others and make informed decisions about her medical care.  *Id.* ¶ 16.  Plaintiff continues to live with these conditions today.[2]

Plaintiff had received medical care at CHOMP prior to the incident.  Guerra Dep. 33–34. Plaintiff's declaration states that she has never visited a hospital without a support person.  Guerra Decl. ¶ 13.  Before Plaintiff met her husband, her grandmothers used to accompany her to doctors' appointments.  *Id.* ¶ 13.  After Plaintiff began dating her now-husband, he would accompany her to appointments.  Guerra Dep. 34–35.  However, in her deposition, Plaintiff indicated that there were times when she went to appointments without her husband.  *Id.*

**C.    October 2021 Emergency Department Visit**

On October 27, 2021, Plaintiff's husband picked her up from work and took her to CHOMP for complaints of nausea, dizziness, light-headedness, fatigue, and stomach pain.  Guerra Decl. ¶ 14.  Plaintiff arrived at CHOMP around 2:40 p.m.  *Id.* ¶ 15.  When Plaintiff and her husband arrived, they saw a sign that said visitors would not be allowed to accompany patients. Guerra Dep. 35–36.

---

[1] The Court overrules Defendants' objection to Plaintiff's declaration as a sham-affidavit.  *See* Cross-MSJ Reply 20–22.  The Court notes inconsistencies with the declaration and deposition and will consider them when examining the evidence.

[2] Though Plaintiff primarily describes current symptoms, the Court need not summarize those facts here because they carry little relevance to the state of her disability in October 2021.  Guerra Decl. ¶¶ 6–9.  The Court nonetheless does not exclude them entirely from its analysis and overrules Defendants' objections to evidence regarding current symptoms.  *See* Cross-MSJ Reply 20–22.

Case No.: 5:22-cv-02882-EJD
ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS
3

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Due to COVID-19 protocols, Plaintiff was seen by a triage nurse in an area outside of the

2    hospital while her husband waited in the parking area.  *Id.* at 36.  Plaintiff explained her symptoms

3    and when they began to the nurse.  CHOMP Medical Records 13, ECF No. 34-5.  Plaintiff also

4    informed the nurse that she has anxiety and panic disorders and needed her husband to stay with

5    her.  Guerra Decl. ¶ 15.  The nurse informed Plaintiff that no visitors were allowed in the waiting

6    room due to their COVID-19 protocols.  *Id.*  Plaintiff later asked another nurse who was taking her

7    vitals if her husband could accompany her, and he also informed Plaintiff that this was against

8    COVID-19 protocols.  *Id.*

9    After being triaged, Plaintiff was taken to a waiting room for approximately one hour,

10    where she reports experiencing a panic attack, crying, and shaking uncontrollably, though this is

11    not reflected in the medical records.  *Id.* ¶ 16; *see also* CHOMP Medical Records.  During this

12    time, Plaintiff again requested a policy modification multiple times from different staff members,

13    but it was denied each time.  Guerra Decl. ¶ 17.

14    Around 4:00 p.m., Plaintiff was taken to an exam room to have an IV administered.  *Id.* ¶

15    18.  Plaintiff reports at this point sobbing, shaking, and continuing to have a panic attack, though

16    this was also not reflected in the medical records. Guerra Decl. ¶ 18; *see also* CHOMP Medical

17    Records.  While in the exam room, Plaintiff provided medical staff her general medical history

18    and described the symptoms that brought her to the hospital.  CHOMP Medical Records 5.

19    Plaintiff then asked one of the nurses in the room, Charge Nurse Bernadette, to allow her husband

20    to enter the emergency department to accommodate her mental health conditions.  *Id.*  When

21    denied, it appears Plaintiff and Nurse Bernadette got in some sort of verbal altercation, with Nurse

22    Bernadette requesting proof of the panic disorder, and Plaintiff threatening to sue Nurse

23    Bernadette under the ADA.  *Id.*

24    After this, at about 5:30 p.m., approval was granted to bring Plaintiff's husband into the

25    emergency department to accommodate Plaintiff's request.  CHOMP Medical Records 12.  The

26    details regarding the process for this approval are unclear.

27    Around the same time, the treating physician, Dr. Caccese, learned of Plaintiff's requests

28    Case No.: 5:22-cv-02882-EJD
ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS

1    for her husband and asked Plaintiff to explain the situation.  Guerra Decl. ¶ 22.  After Plaintiff

2    explained, Dr. Caccese informed Plaintiff that he was going to discharge her anyway.  *Id.*  Plaintiff

3    reports Dr. Caccese acting angry[3] and discharging her without discussing her lab work or

4    recommending follow ups, other than saying her lab work was "normal."  Guerra Dep. 62.

5    However, according to the medical records, Dr. Caccese told Plaintiff that there were no signs of

6    anemia, pancreatitis, gallbladder, or liver disease, and a low clinical suspicion for any emergent

7    intra-abdominal process.  CHOMP Medical Records 12.  Dr. Caccese then provided Plaintiff with

8    a referral to gastroenterology, instructed her to follow up with her primary care physician, and

9    provided prescription for Zofran.  *Id.*

10    Plaintiff did not want to delay her discharge by waiting for her husband, so she was

11    discharged at about 5:40 p.m.  *Id.* at 4.  Plaintiff returned to work the next day and did not have

12    any further related stomach pain problems.  Guerra Dep. 67.

13    Throughout her October 27, 2021, visit, Plaintiff states that she was never offered any

14    medication to relieve the symptoms of her anxiety.  Guerra Dep. 53; Guerra Decl. ¶ 20.  However,

15    a nurse on staff, Nurse Cruz, submitted a declaration stating that she offered Plaintiff anti-anxiety

16    medication. Cruz Decl. ¶ 3. [4]  Nurse Cruz also suggested Plaintiff use FaceTime to connect with

17    her husband, but Plaintiff states she declined because it was not the same as him being there in

18    person and their phone batteries were low.  Guerra Dep. 39–40.  There is also a medical note

19    observing that Plaintiff had "no acute distress."  *See* CHOMP Medical Records 8.

20    **II.    LEGAL STANDARD**

21    Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only

22    when the moving party shows that there is no genuine dispute of material fact.  A genuine dispute

23    exists if there is sufficient evidence such that a reasonable fact finder could decide in favor of the

24

---

25    [3] The Court need not rule on Defendants' hearsay objections to statements Plaintiff alleges to have
26    overheard Nurse Bernadette and Dr. Caccese make in the hallway, as it is not necessary for the
      Court's analysis here.  *See* Cross-MSJ Reply 20–22.
27    [4] Plaintiff failed to provide sufficient foundation for her objection as to this paragraph of Nurse
      Cruz's declaration, and specifically, as to this fact.  *See* MSJ Reply 1.
28    Case No.: 5:22-cv-02882-EJD
      ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS

United States District Court
Northern District of California

nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And that dispute is material if it might affect the outcome of the suit.  *Id.*  In determining if a genuine dispute of material fact exists, a court must "tak[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party bears the burden of persuading the court that there is no genuine dispute of material fact, and it also bears the initial burden of producing evidence that demonstrates there is no dispute.  *Cunningham v. Medtronic, Inc.*, 2018 WL 4053446, at *2 (N.D. Cal. Aug. 24, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  When the moving party bears the ultimate burden of persuasion, its initial burden of production is to "establish 'beyond controversy every essential element of'" its claim or defense.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  If the moving party satisfies this initial burden, the nonmoving party can nonetheless defeat summary judgment by showing "the evidence, taken as a whole, could lead a rational trier of fact to find in its favor."  *Id.*

## III.    DISCUSSION

### A.    Motion for Leave to Amend Answer

As an initial matter, the Court finds Defendants' request to amend their Answer moot. Defendants seek to correct an error in their Answer that inadvertently admits to liability under ADA Title III.  Plaintiff opposes, arguing that Defendants' inadvertent admission in their Answer entitles her to summary judgment as to her Title III claim.  For the reasons explained below, the Court ultimately finds that the Court has no jurisdiction over Plaintiff's Title III claim under the doctrine of mootness, thus any part of Defendants' Answer responding to this claim is moot as well.  Accordingly, the Court **TERMINATES AS MOOT** Defendants' motion for leave to amend their Answer.

But regardless, the Court notes it is clear from the Answer that Defendants intended to dispute Title III liability.  Defendants "admitted" to the allegations in paragraph 23, which reads:

The ADA states that "No individual shall be discriminated against on

United States District Court
Northern District of California

United States District Court
Northern District of California

> the basis of disability in the full and equal enjoyment of the goods,
> services, facilities, privileges, advantages, or accommodations of any
> place of public accommodation by any person who owns, leases, or
> leases to, or operates a place of public accommodation." 42 USC §
> 12182. Defendants discriminated against Plaintiff including, but not
> limited to, in the following respects . . . .

Compl. ¶ 23; Answer ¶ 6, ECF No. 9.  The paragraph goes on to quote three requirements in the

statute.  However, just under the paragraph where Defendants "admitted" the allegation in

paragraph 23, they also denied the allegations that Defendants violated Title III in paragraphs 24

through 26, which provide:

> 24.     The acts and omissions of Defendants set forth herein were in
> violation of Plaintiff's rights under the ADA and the regulations
> promulgated thereunder, 28 CFR Part 36 et seq.
> 25.     On information and belief, Defendants have continued to
> violate the law. If Defendants do not make necessary modifications in
> policies, practices, or procedures, and continue to fail to
> communicate effectively with people with disabilities, Plaintiff will
> be harmed again.
> 26.     Pursuant to section 42 USC 12188, Plaintiff is entitled to the
> remedies and procedures set forth in section 204(a) of the Civil Rights
> Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to
> discrimination on the basis of disability in violation of the ADA or
> has reasonable grounds for believing that he is about to be subjected
> to discrimination.

Compl. ¶¶ 24–25; Answer ¶ 7.

Defendants' counsel submitted a declaration stating that they intended only to admit the

accuracy of the statute cited in paragraph 23, not the additional language from Plaintiff alleging

that Defendants violated this statute.  Tabari Decl., ECF No. 33-2.  The Court finds this a

reasonable explanation.  Under these circumstances, Plaintiff is not entitled to prevail on her claim

merely because Defendants made an error in their Answer.[5]

**B.      Plaintiff's MSJ**

Plaintiff moves for summary judgment as to all claims except for her ADA Title IV claim.

Plaintiff also requests summary judgment as to several of Defendants' affirmative defenses.

The Court finds: (1) disputed facts regarding Plaintiff's disability at the time of the

---

[5] The Court similarly rejects Plaintiff's argument that Defendants' withdraw of an affirmative
defense related to proximate cause is evidence of their intent to admit liability.

Case No.: 5:22-cv-02882-EJD
ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS
7

1    incident preclude the Court from granting summary judgment on any of Plaintiff's claims; and (2)

2    dismissal of Defendants' irrelevant affirmative defenses is appropriate.

3                    **1.    Disputed Facts Regarding Qualifying Disability**

4             All of Plaintiff's claims require that she establish a qualifying disability.  As Plaintiff

5    highlights, a violation of the ADA is a violation of the CDPA and Unruh Act.  Cal. Civ. Code §§

6    51(f), 54(c).  Under the ADA, a "qualified person with a disability" includes a person with "a

7    physical or mental impairment that substantially limits one or more major life activities."  42

8    U.S.C. § 12102(1)(A); *see also* Compl. ¶ 21 (" Plaintiff is a qualified individual with a disability

9    as defined in the ADA, as she has impairments that substantially limit one or more major life

10   activities.").[6]  Plaintiff has not provided a definition of "disability" under the CDPA or Unruh Act

11   that differs from this standard.

12            The Court finds that there are genuine disputes of material fact regarding whether Plaintiff

13   had a qualifying disability at the time of the incident—specifically, whether Plaintiff's condition

14   impacted her major life activities at that time.  Plaintiff reports that her conditions in her early

15   twenties caused her to frequently call out of work, avoid driving, and isolate herself from social

16   situations.  However, Plaintiff then goes on to describe her current condition and how her anxiety

17   and panic attack disorders impact her life today; there is little in the record about how it impacted

18   her life at the time of the incident.  Plaintiff also reports that her conditions impacted her ability to

19   communicate with others and make informed decisions about her care at the time of the incident;

20   but the medical records show that Plaintiff was able to accurately communicate her symptoms and

21   medical history without issue and presented "no acute distress" at the time of the incident.

22   Plaintiff similarly indicates in her declaration that, because of her conditions, she never attended

23   medical appointments alone, but she also stated in her deposition that sometimes her husband did

24   not accompany her to medical appointments.  It is possible her grandmothers or someone else

25

26   _____

27   [6] The two additional definitions of a qualifying "disability"—having a "record of such an impairment" or being "regarded as having such an impairment"—are not pled.  *See* 42 U.S.C. § 12102(1).  *See* Compl. ¶ 21.

28   Case No.: 5:22-cv-02882-EJD
     ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS

United States District Court
Northern District of California

accompanied her to appointments when her husband could not, but viewing all facts in the light most favorable to Defendants, this is not clear from the record—Plaintiff only speaks to her grandmothers accompanying her before her husband came into her life.

It is not the role of the Court to weigh this evidence and determine to what extent Plaintiff's condition impacted her life at the time of the incident.[7]  Accordingly, the Court **DENIES** Plaintiff's motion for judgment as to all of her claims.[8]

## 2.    Affirmative Defenses

Next, Plaintiff argues that the Court should dismiss several of Defendants' affirmative defenses because they were either abandoned or are irrelevant.  Defendants do not dispute dismissal as to the abandoned defenses, which are Affirmative Defense Nos. 5, 7, 8, 15, and 19. But there is a dispute as to whether the remaining affirmative defenses regarding good faith and intent and contributory/comparative negligence, Affirmative Defense Nos. 4, 6, 9, 13, 14, and 26, are applicable here.

The Court finds that they are not.  As Plaintiff highlights, courts have held that there is no duty to mitigate under the Unruh Act or DPA, that defenses like comparative fault are irrelevant in civil rights actions, and that there is no requirement to show any intent to discriminate in these circumstances.  *See, e.g., Dytch v. Lazy Dog Rests., LLC*, No. 16-cv-03358-EDL, 2018 U.S. Dist. LEXIS 232048, at *42–43 (N.D. Cal. Apr. 18, 2018) (collecting cases); *Wilson v. Pier 1 Imps., Inc.*, 2006 U.S. Dist. LEXIS 21216, at *21 (E.D. Cal. Apr. 12, 2006).  Defendants did not engage with this case law or reference their affirmative defenses whatsoever in their reply.

Therefore, the Court **GRANTS** Plaintiff's MSJ as to Defense Nos. 4, 5, 6, 7, 8, 9, 13, 14, 15, 19, and 26.

---

[7] The Court's holding rests on disputed facts regarding whether Plaintiff's disability impacted her life, not whether the evidence adequately shows Plaintiff was diagnosed with anxiety and panic attack disorders at the time of the incident.  Accordingly, the Court need not rule on Defendants' objections regarding evidence of Plaintiff's diagnosis.  *See* Cross-MSJ 20–22.

[8] The Court need not rule on Plaintiff's request for judicial notice of the U.S. Department of Justice and California Department of Public Health documents, as they are irrelevant to its analysis here regarding Plaintiff's disability.  *See* Req. for J. Notice, ECF No. 31-18.

Case No.: 5:22-cv-02882-EJD
ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS

United States District Court
Northern District of California

**C.    Defendants' Cross-MSJ**

Defendants move for summary judgment as to all of Plaintiff's claims. Plaintiff does not dispute dismissal of her Title IV claim.

The Court finds: (1) a change in CHOMP's visitor policy renders Plaintiff's ADA Title III claim and claim for injunctive relief under the Unruh Act moot; and (2) disputed material facts preclude summary judgment as to Plaintiff's remaining state law claims.

**1.    Injunctive Relief under ADA Title III and Unruh Act**

Federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). The inability to review moot cases derives from Article III's requirement that a "case or controversy" exist between the parties. *Id.* at 316. A claimed remedy might become moot if "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

Defendants argue that Plaintiff's claims for injunctive relief under the ADA and Unruh Act are moot. The Court agrees. Defendants present evidence that CHOMP rescinded the policy at issue in 2023 and returned to its pre-COVID-19 policy that allows visitors into the emergency department. There is no evidence that the COVID-19 policy has been reinstated since then. Therefore, there is no policy for the Court to enjoin. Similar to other litigation challenging analogous COVID-19-related policies, the Court finds "[t]his is a classic case in which, due to intervening events, there is no longer a live controversy necessary for Article III jurisdiction[, n]or is there any effective relief that can be granted by the court." *Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022).

Plaintiff still argues that the case remains a live controversy under the voluntary cessation exception to mootness. A defendant's "[v]oluntary cessation of challenged conduct moots a case . . . only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (quoting

*United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)).

"Defendants face a heavy burden to establish mootness in such cases." *Id.*; *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Friends of the Earth, Inc.*, 528 U.S. at 189. In the context of ADA claims, when considering non-structural features, courts generally have found that "voluntary remediation" of violations do not necessarily moot an issue because the violations "could easily reoccur." *Moore v. Saniefar*, 2017 WL 1179407, at *6 (E.D. Cal. Mar. 29, 2017) (citation and internal quotation marks omitted).

Here, the Court finds that Defendants have clearly established the former COVID-19 policy could not reasonably be expected to recur. The initial presentation of the COVID-19 emergency was a unique situation, and the spread of the COVID-19 virus, along with the immunity levels, treatments, and research, has significantly changed. Defendants have presented evidence that CHOMP issued restrictions based on the unique clinical situation before it, and given these changed circumstances, there is no reasonable basis to believe that the same policy from October 2021 will be re-instated at any time.

Plaintiff also argues that her claim is not moot because Defendants' conduct is capable of repetition while evading review. "The capable of repetition yet evading review exception is limited to extraordinary cases where (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the Plaintiff will be subjected to it again." *Brach*, 38 F.4th at 15 (internal quotation marks omitted). Though the first element may apply, for the reasons discussed above, the Court finds there is no reasonable expectation that Plaintiff will be subjected to the conduct alleged here again. It is true, as Plaintiff suggests, that a similar virus could possibly develop and spread at similar rates across the country, causing CHOMP to re-institute the challenged policy, but this is speculative. As stated by the Ninth Circuit, "[t]he test is 'reasonable expectation,' not ironclad assurance." *Brach*, 38 F.4th at 15.

Therefore, the Court **GRANTS** Defendants' Cross-MSJ as to Plaintiff's claims for prospective relief under the ADA and Unruh Act. Because Plaintiff can only recover injunctive

relief under the ADA, this claim is dismissed.  Plaintiff's claim for damages under the Unruh Act remains.

### 2.    State Law Claims

Plaintiff predicates her remaining state law claims on the success of her Title III claim. The elements to establish a Title III violation are: (1) the plaintiff has a qualifying disability; (2) the defendant owned, leased, or operated a place of public accommodation; and (3) the defendant denied the plaintiff full and equal enjoyment on the basis of her disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  The Unruh Act differs slightly by requiring that the defendant operate as a business establishment.  Civ. Code § 51(b).

First, as the Court discussed above, there are disputed facts regarding whether Plaintiff had a qualifying disability under the CDPA and Unruh Act at the time of the incident.  The same is true when the Court examines the facts in the light most favorable to Defendants here.  The genuine disputes of material fact preclude the Court from finding that Plaintiff did, or did not, have a qualifying disability during her October 27, 2021, emergency department visit.

Second, there is no dispute that Defendants are a qualifying public entity for purposes of the CDPA and a qualifying business establishment for purposes of the Unruh Act.

Third, there are genuine disputes of material fact regarding whether Plaintiff was denied public accommodations, and whether that denial deprived Plaintiff of full and equal enjoyment. Regarding the former, CHOMP approved Plaintiff's request for an accommodation around 5:30 p.m., approximately three hours after Plaintiff arrived and ten minutes before Plaintiff was discharged.  Defendants acknowledge that their response may have been delayed, but argue nevertheless that this satisfied their obligations under the ADA.  Where a defendant delays in approving a request for accommodation, the defendant will generally not be held liable for denying the request absent evidence that the defendant "acted in bad faith or took an excessive amount of time to decide how to accommodate the disabled individual."  *Anderson v. Ross Stores, Inc.*, No. C 99-4056 CRB, 2000 WL 1585269, at *9 (N.D. Cal. Oct. 10, 2000).  The Court finds no evidence of bad faith in the record, but it is disputed whether the amount of time it took to grant

Case No.: 5:22-cv-02882-EJD
ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS

United States District Court
Northern District of California

1  the accommodation was "excessive."  A jury may find that taking three hours to accommodate

2  Plaintiff's request was not excessive given CHOMP's changing policies and staffing challenges

3  arising from the pandemic.  However, a jury could also find the three-hour delay excessive given

4  the timing of Plaintiff's discharge and the testimony that these requests were usually resolved in

5  twenty minutes.  Regarding whether Plaintiff was deprived of full and equal enjoyment, while the

6  medical records show that Plaintiff was able to accurately communicate her symptoms and

7  medical history without issue at the time of the incident and medical staff observed no acute

8  distress, Plaintiff's account suggests otherwise.  A jury, not the Court, must assess Plaintiff's

9  credibility and weigh her testimony against this evidence.

10      Therefore, because Defendants cannot establish with undisputed facts that Plaintiff is

11  unable to prove her state law claims, the Court **DENIES** Defendants' Cross-MSJ as to these

12  claims.

## IV.    CONCLUSION

14      Based on the foregoing, the Court **TERMINATES AS MOOT** Defendants' motion for

15  leave to file an amended Answer.

16      The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's MSJ.  The Court

17  dismisses Defendants' Affirmative Defense Nos. 4, 5, 6, 7, 8, 9, 13, 14, 15, 19, and 26.  Plaintiff's

18  motion is denied in all other respects.

19      The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Cross-MSJ.  The

20  Court dismisses Plaintiff's ADA Title III and Title IV claims and her claim for injunctive relief

21  under the Unruh Act.  Defendants' motion is denied in regard to Plaintiff's remaining state law

22  claims.  Given the advanced stage of litigation and discovery, the Court will continue to exercise

23  supplemental jurisdiction over these state law claims.

24      **IT IS SO ORDERED.**

25  Dated: April 1, 2025

26

27  _____
    EDWARD J. DAVILA
    United States District Judge

28  Case No.: 5:22-cv-02882-EJD
    ORDER TERM. MOT. TO AMEND; GRANTING IN PART AND DEN. IN PART MSJS

*United States District Court*
*Northern District of California*